PEOPLE v WILHITE

Docket No. 221000. Submitted February 1, 2000, at Grand Rapids. Decided April 21, 2000, at 9:15 A.M.

Charles E. Wilhite, Jr., pursuant to a plea bargain, pleaded no contest in the Isabella Circuit Court, Paul H. Chamberlain, J., to a charge of assault with a dangerous weapon. At the request of defense counsel and over the objection of the prosecution, sentencing was delayed. During the delay, the defendant had to abide by terms similar to probation. The court eventually granted a defense motion for the withdrawal of the no-contest plea and scheduled the case for trial, ruling that the defendant had tendered the plea under a mistaken belief formed from defense counsel's advice that the charge would be dismissed by the prosecution at the end of the period of delay. The prosecution appealed by leave granted.

The Court of Appeals *held*:

MCR 6.310(B) provides that on a defendant's motion or with the defendant's consent, a court in the interest of justice may permit an accepted plea to be withdrawn before sentence is imposed unless withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea. The trial court in this case abused its discretion in granting the motion to withdraw the no-contest plea. Neither the defendant nor his counsel presented a reason for withdrawal inasmuch as it was the trial court that, in leading questions posed to the defendant, suggested mistake as a basis for withdrawal. The trial court also refused to review the transcript of the plea-taking proceeding and instead relied on defense counsel's representations in determining that the defendant had tendered the plea while under a mistaken belief. The prosecution did not have to establish that substantial prejudice would result from withdrawal in the absence of a showing by the defendant that withdrawal was in the interest of justice, i.e., that there was a fair and just reason for withdrawal.

Reversed and remanded for sentencing.

FITZGERALD, P.J., dissenting, stated that the trial court did not abuse its discretion in granting the motion to withdraw the no-contest plea. The defendant established a fair and just reason for withdrawal with the claim that he had not received effective assis-

tance of counsel with regard to the plea because defense counsel wrongly advised him that the charge would be dismissed after the delay in sentencing. The prosecution offered no evidence to support a finding that substantial prejudice would result from withdrawal.

Criminal Law — Withdrawal of Pleas Before Sentencing.

A court in the interest of justice may permit an accepted plea to be withdrawn before sentence is imposed unless withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea; the defendant has the burden of establishing a fair and just reason for withdrawal, and the prosecutor has the burden of establishing that substantial prejudice would result from withdrawal (MCR 6.310[B]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Larry J. Burdick*, Prosecuting Attorney, and *Robert A. Holmes, Jr.*, Senior Assistant Prosecuting Attorney, for the people.

Before: Fitzgerald, P.J., and Saad and Whitbeck, JJ.

Whitbeck, J. The prosecutor appeals by leave granted the trial court's verbal ruling granting defendant Charles E. Wilhite's motion to withdraw his no-contest plea and scheduling the case for trial. We reverse because "[t]here is no absolute right to withdraw a . . . plea once it has been accepted," Wilhite failed to make the showing necessary to justify withdrawing his no-contest plea, and the trial court made its decision while ignoring the available evidence. See *People v Lamar Harris*, 224 Mich App 130, 131; 568 NW2d 149 (1997).

I. Basic Facts and Procedural History

Pursuant to a plea agreement, on March 17, 1998, Wilhite pleaded no contest to a charge of assault with a dangerous weapon, MCL 750.82; MSA 28.277. The record does not indicate that the parties discussed

delaying Wilhite's sentence at the time he pleaded no contest or that the prosecutor intended to dismiss charges after any such delay. The prosecutor put the full plea bargain on the record, and Wilhite, who was under oath at the time, and defense counsel both affirmed the prosecutor's statement of the bargain. The prosecutor maintains, and Wilhite does not dispute, that the first time any party mentioned delaying sentencing was in an April 15, 1998, letter from defense counsel, drafted after Wilhite entered his plea on March 17, 1998, which stated in pertinent part:

> Please be advised we are willing to do an additional substantial amount of jail time as well as extra hours of community service and any other stricter requirements you feel would be fair in return for a delay of sentence and even at the conclusion of the delay we would plead to a high court misdemeanor, preserving a criminal record which you were interested in in [sic] a felony for your purposes. We will be asking for a delay of sentence in this matter and we wondered if you would be interested in agreeing to the sentence bargain. Additionally, during your contact with the victim we would also be willing to cooperate civilly, if he would be willing to go along with our sentence bargain.

The prosecutor's written response, dated April 20, 1998, stated that "the gravity of the circumstances surrounding Mr. Wilhite's case does not lend itself to any further plea bargaining than that which has already taken place." Although the prosecutor acknowledged Wilhite's intent to ask for this type of sentence arrangement, the prosecutor noted that he was likely to object to such an arrangement.

At the initial sentencing hearing on May 22, 1998, defense counsel requested a one-year delayed sentence for Wilhite under MCL 771.1(2); MSA 28.1131(2)

over the prosecutor's objection. The trial court
granted that request and ordered sentencing to take
place on May 21, 1999.

On May 21, 1999, defense counsel failed to appear
at the scheduled time. The following colloquy then
occurred between the trial court and the prosecutor:

> *The Court:* I put him on a judicial six month delay, or one
> year and six month delay or something. I got a report from
> DOC.[1] Have you seen that?
>
> *Mr. Holmes* [The prosecutor]: Yes sir, I have. I'm not in
> opposition to that, I just want—I'm here for the purpose of
> making sure that everyone . . .
>
> *The Court:* Do you want to dismiss it? I know it's not . . .
>
> *Mr. Holmes:* The delay was not part of the plea agree-
> ment. We never anticipated the delay. The court in its dis-
> cretion gave the delay. I'm here to ensure that everybody
> understands that it was a judicial delay of sentence, and not
> agreed to a dismissal by the prosecutor.

The trial court then indicated that it intended to
impose fines, costs, and, possibly, attorney fees. The
trial court also suggested that, after those items were
determined, it intended to discharge Wilhite from the
sentence. The matter adjourned briefly, and when it
was recalled, although defense counsel was still
absent, the trial court stated to Wilhite, "[I]t seems
that you may've been under a mistaken belief at the
time that the plea was entered so I think you need to
discuss with counsel before we go any further in this
matter." The trial court again stated that it was

---

[1] This was, apparently, an allusion to the Department of Corrections
case reports dated April 19, 1999, and May 21, 1999. In the first report, the
writer recommended that "this case be dismissed or [Wilhite] be charged
with a lesser offense. In the second report, the writer indicated that "the
court is considering discharging the case against [Wilhite]."

inclined to impose fines and costs "and send you on your way." However, because defense counsel was on the way to court, the trial court continued the case. When the case was recalled again, the trial court adjourned the case to June 4, 1999, apparently at defense counsel's request.

After several more delays, the parties reconvened on July 2, 1999, at which time defense counsel explained that "we were to come back here today because the prosecutor asked to have some time to find the victim to ask him if it was all right to do what we were going to do." However, defense counsel reported, the prosecutor had not contacted the victim and he (defense counsel) wanted his "own thirty days" to attempt to find the victim. The assistant prosecutor present[2] at the hearing stated that he understood that the prosecutor ordinarily in charge of the case intended to talk to the victim and, following that discussion, the prosecutor was going to consider reducing the charge to attempted felonious assault. Defense counsel responded, "That's not true, your honor." The trial court then asked, "Are you moving to withdraw your plea, Mr. Veldhuis [defense counsel]," and defense counsel responded, "I guess we are." Mr. Kranz, the assistant prosecutor, responding to the request to withdraw the please, stated:

> I guess this is pretty old, your honor. I don't know, I'm not prepared for this type of motion today. I'm here to tell you what we've done to make efforts, and what I understand we were supposed to do.

---

[2] The senior assistant prosecutor for Isabella County had handled all previous hearings. This was a different member of the prosecutor's office.

*Mr. Veldhuis:* We would ask to withdraw the plea, your honor.

*The Court:* And I assume the basis for that is—I mean this is about the third or fourth time I've had this scheduled. As I understand it, Mr. Veldhuis, you thought that the delay, and your client thought that the delay of sentence, at the conclusion of the delay the prosecutor was going to dismiss. Is that correct?

*Mr. Veldhuis:* That is correct. And . . .

*The Court:* Is that correct, Mr. Wilhite?

*Defendant:* Yes sir, your honor.

*The Court:* That's what you believed when you entered the plea?

*Defendant:* That's what was explained to me, your honor.

*The Court:* The court is going to waive notice to the prosecutor because we've been here, the prosecutor has been here when you have, Mr. Veldhuis, and we've all been here together and there's no surprise. The court is going to permit you to withdraw the plea.

\*          \*          \*

*Mr. Kranz:* It's my understanding that our office never made any type of delay offer at all. That was court imposed. Wherever their understanding is that they would be dismissed at the end of the delay is beyond me. No one at our office has ever made any offer like that. My understanding was . . .

*The Court:* Well, if you want to get a copy of the—this whole thing has been processed in that vein. I don't know how anybody got that impression. *If I indicated I was going to give a delay of sentence, Mr. Kranz, and I don't have any recollection of what I did a year ago in this case, but if I indicated that to Mr. Veldhuis and then he goes out and tells his client that this delay—at the end of the delay you will get the charges dismissed then his client is entering a plea under a mistaken belief.* So we were here on June 3—whoops. This plea was entered—it looks like the plea was entered on 3/17/98. This matter was bound over, it looks like, in December of '97. So it's about a year-and-a-half old. In light of the fact that cases routinely prior to me

coming to the bench went through this court in a year, I
don't see where there's any inordinate amount of delay.

*Mr. Kranz:* Your honor, may we view the transcript of the
plea to see if anything was mentioned before you make this
decision?

*Mr. Veldhuis:* Now the . . .

*The Court:* Whether or not he withdraws his plea is dis-
cretionary with me. You know, Mr. Kranz, I've heard enough
about this case. I mean if the defendant is under a mistaken
belief at the time of the plea was entered, he's under a mis-
taken belief. Mr. Veldhuis tells him, that's what he advises
him. *I've known Mr. Veldhuis since we were in grade
school. I don't have any reason to question his veracity.
I've practiced with him—he began practicing law about
my third or fourth year of practice. I've never had any rea-
son to question his veracity in the sixteen or seventeen
years I've practiced around him. Now that's the belief of
the defendant. It doesn't matter what transcripts say etc.
He tells me that. Mr. Veldhuis tells me he informed him of
that. That's the way it is.* He can withdraw his plea and
we'll start over. [Emphasis supplied.]

## II. STANDARD FOR WITHDRAWING A PLEA AND STANDARD OF REVIEW

The trial court appeared to treat Wilhite's July 2,
1999, request to withdraw his plea as though it were
made before the trial court imposed a sentence, even
though Wilhite had spent the year-long delay before
sentencing abiding by terms substantially similar to
probation. See MCL 771.1(2); MSA 28.1131(2). Assum-
ing that those probation-like terms did not constitute
a sentence, MCR 6.310(B) provides the process for
withdrawing a guilty plea:

On the defendant's motion or with the defendant's con-
sent, the court in the interest of justice may permit an
accepted plea to be withdrawn before sentence is imposed

unless withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea. If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by MCR 6.311(B).

Because Wilhite did not allege an error in the plea-taking procedure, he relied on the trial court's discretionary power to permit withdrawal of the plea before sentencing. Therefore, Wilhite had the burden of showing that withdrawal was "in the interest of justice," meaning that he had to articulate "a fair and just reason" for withdrawing the plea. *Id.; Harris, supra.* Wilhite also had to prove that withdrawing the plea would not "substantially prejudice the prosecutor because of reliance on the plea." MCR 6.310(B).

Because the trial court had the discretion to grant or deny Wilhite's request to withdraw his plea, we review the trial court's decision for an abuse of discretion. See *Harris, supra.*

### III. ABUSE OF DISCRETION

As set out at length above, the record does not indicate that, on July 2, 1999, Wilhite or his attorney presented a reason for his request to withdraw his no-contest plea. Instead, the trial court suggested that Wilhite might want to withdraw his plea and then proposed a reason why Wilhite might want to do so: Wilhite thought that when he finished adhering to the terms of the sentence delay, the prosecutor intended to dismiss the charges. Asked if he had such an understanding when he entered his no-contest plea, Wilhite went along with the trial court's suggestion and responded, "That's what was explained to me, your Honor." While leading questions by the trial

court may be appropriate in some circumstances, here the trial court lacked a factual basis for its suggestions to Wilhite.

Clearly, the trial court relied on its trust in defense counsel as support for the decision it made to inquire about a plea withdrawal. We have no reason to question defense counsel's reputation for veracity or the trial court's faith in that reputation. However, the law requires the trial court to make its decision according to the evidence on the record, *none* of which supported its decision in this case. See generally *People v Cheeks*, 216 Mich App 470, 479; 549 NW2d 584 (1996) (trial court did not abuse its discretion because the record supported its conclusion on the underlying legal issue). This failure to take notice of the record, or even to consult the record to determine what facts it might reveal, is the essence of an abuse of discretion, which the Michigan Supreme Court so cogently described in *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959):

> Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.[3]

---

[3] We cite *Spalding* because it, better than any other authority, explains the exercise of discretion. We do not intend to alter how courts apply or

Here the trial court, which admitted that it could not remember what occurred, concluded that defense counsel's representation was the best substitute for the transcripts. Furthermore, that the trial court indicated that those transcripts would not affect its decision in the case no matter what they indicated, suggests that it was unwilling to engage in the weighing and analysis the *Spalding* Court stated was the crux of a proper exercise of discretion; similarly, we believe that an unprejudiced person considering the facts on which the trial court acted would conclude that there was no justification for the trial court's ruling. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 658 (1996).

The basis for the trial court's decision is even more troubling because Wilhite did not show that withdrawing his no-contest plea would be in the interest of justice. *Harris, supra* at 131; *People v Jackson*, 203 Mich App 607, 611; 513 NW2d 206 (1994). Wilhite neither claimed actual innocence nor claimed that he had a valid defense to the charge. *People v Thew*, 201 Mich App 78, 96; 506 NW2d 547 (1993); *People v Spencer*, 192 Mich App 146, 151-152; 480 NW2d 308 (1991). Rather, Wilhite voluntarily and knowingly pleaded no contest to the charges pursuant to a plea agreement placed on the record, which did not encompass a delay of sentence or dismissal of charges. Even if defense counsel suggested to Wilhite that a delayed sentence with dismissal of the charges might be forthcoming, counsel's incorrect advice is insufficient to demonstrate that the plea was involuntary, which

interpret the abuse of discretion standard of review in criminal cases by citing this civil case.

would be reason enough to allow Wilhite to withdraw his plea. See *People v Miles*, 454 Mich 90, 106, n 1; 559 NW2d 299 (1997) (BOYLE, J., dissenting); *In re Oakland Co Prosecutor*, 191 Mich App 113, 121-125; 477 NW2d 455 (1991). Nor is subjective dissatisfaction with a sentence grounds for withdrawing a plea, if that was Wilhite's true motivation for seeking to withdraw his plea. *People v Haynes (After Remand)*, 221 Mich App 551, 559; 562 NW2d 241 (1997). Because Wilhite did not establish "a fair and just reason for withdrawal of the plea," *Jackson, supra* at 611, the prosecutor did not have to establish that substantial prejudice would result from the withdrawal, *People v Kennebrew*, 220 Mich App 601, 605; 560 NW2d 354 (1996).

We reverse and remand for sentencing. We do not retain jurisdiction.

SAAD, J., concurred.

FITZGERALD, P.J. *(dissenting)*. I respectfully dissent from the majority's conclusion that the trial court abused its discretion by granting defendant's motion to withdraw his no-contest plea and scheduling the case for trial. Because I cannot conclude that there was no justification for the trial court's ruling, I would affirm.[1]

MCR 6.310(B) states the standard of review that governs motions to withdraw guilty pleas before sentence:

---

[1] I note that defendant could be tried on the original charge of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, if the plea is withdrawn.

> On the defendant's motion or with the defendant's con-
> sent, the court in the interest of justice may permit an
> accepted plea to be withdrawn before sentence is imposed
> unless withdrawal of the plea would substantially prejudice
> the prosecutor because of reliance on the plea. If the
> defendant's motion is based on an error in the plea pro-
> ceeding, the court must permit the defendant to withdraw
> the plea if it would be required by MCR 6.311(B).

Use of the term "may" denotes that the trial court has
discretion to allow the withdrawal of the plea before
sentencing if withdrawal is in the interest of justice
and the withdrawal does not substantially prejudice
the prosecutor because of reliance on the plea. *People
v Spencer*, 192 Mich App 146, 150; 480 NW2d 308
(1991). An abuse of discretion exists when an unprej-
udiced person, considering the facts on which the
trial court acted, would conclude that there was no
justification or excuse for the ruling made. *People v
Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996).

Where, as here, a defendant moves to withdraw the
plea before sentencing, the burden is on the defend-
ant to establish a "fair and just" reason for with-
drawal of the plea; the burden then shifts to the pros-
ecutor to establish that substantial prejudice would
result from allowing the defendant to withdraw the
plea. *People v Jackson*, 203 Mich App 607, 612; 513
NW2d 206 (1994).

I agree that there is no evidence on the record to
suggest that a dismissal of the charges against
defendant upon successful completion of the delayed
sentence was a part of the plea agreement. However,
defendant's proffered reason for withdrawing his plea
was not that dismissal of the charges was part of the
plea agreement, but rather that he pleaded no contest
as a result of defense counsel's erroneous advice that

the charges would be dismissed upon successful completion of the delayed sentence. Defense counsel represented to the court that he indeed advised defendant that the charge would be dismissed upon successful completion of the delayed sentence, despite the fact that there is absolutely nothing on the record to support a belief that the prosecutor agreed to dismiss or reduce the charge if defendant complied with the conditions of the delay. In light of defense counsel's representation, the trial court determined that defendant's plea was the result of a "mistaken belief," and that this mistaken belief was a fair and just reason for withdrawal of the plea.

Given the trial court's statement that it was unnecessary to consult the record to determine the exact terms of the plea agreement, as well as the trial court's statements with regard to withdrawal of the plea, I find it clear that the trial court essentially concluded that defendant did not receive the effective assistance of counsel with regard to the plea and that it was therefore in the interest of justice to allow defendant to withdraw his plea. Under these circumstances, I cannot conclude that an unprejudiced person would find that there was no justification for the court's ruling that defendant established a fair and just reason for withdrawal of his plea. *Ullah, supra* at 673.

Because the trial court found that defendant established a "fair and just" reason for withdrawal of his plea, *Jackson, supra* at 611, the prosecution was required to establish that substantial prejudice would result from the withdrawal. *People v Kennebrew*, 220 Mich App 601, 605; 560 NW2d 354 (1996). From my review of the record, it appears that the prosecution

offered no evidence to support a finding that substantial prejudice would result from the withdrawal. Accordingly, I would hold that the trial court did not abuse its discretion by granting defendant's motion to withdraw his no-contest plea.